## Burbank, et al. v. Jones, et al.

(Decided May 23, 1922.)

### Appeal from Union Circuit Court.

Drains—Establishment—Appeal and Error.—Where a drainage district has been regularly established according to our statutes, and the viewers have made their final report of assessment of benefits and classifications of the lands for the purpose of paying the costs of the improvement and the controversy is one as to whether the lands of the different exceptors to the report should be placed in the classes to which they were assigned by the report of the viewers, or in other classes, only a question of fact is involved which when properly submitted to the jury and determined is conclusive upon the parties.

HENSON & TAYLOR, ALLEN, HARRIS & ALLEN. EARL L. FOWLER and FLOURNOY & FLOURNOY for appellants.

MORTON & MORTON and THOMAS S. WALLER, JR. for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This proceeding for the establishment of Goose Pond drainage district was commenced in the Union county court in 1917, and the final report of the viewers fixing the classification of the lands and assessing the benefits derived from the construction of the proposed ditch was filed in 1919. The district is in the Ohio River Valley, being about three miles wide at its greatest breadth and eleven miles long and embraces several thousand acres of land. In it are included lands belonging to more than fifty separate holders. After the filing of the viewers' final report the owners of the Burbank estate, a large one consisting of two boundaries, and the owners of the Atkinsons' estate, also a large one consisting of two boundaries, filed exceptions to the report of the viewers. The upper tract of land belonging to the Burbanks contained

about 800 acres, and the lower tract about 600 acres, while the upper tract owned by the Atkinsons contains 622 acres and their lower tract 1014 acres. In classifying the Burbank lands the viewers reported that of their 600 acre tract there were 33 acres in class "A," 104 acres in class "B," 96 acres in class "C," and 40 acres in class "D," and in their 800 acre tract there were 33 acres in class "A," 73 acres in class "B," 85 acres in class "C," and 50 acres in class "D." The Atkinsons' land, upper tract, according to the report of the viewers, contains 622 acres and was classified as 58 acres in class "A," 74 acres in "B," 100 acres in "C," and 30 acres in "D;" the lower tract of the Atkinsons has 125 acres in class "A," 110 acres in class "B," 100 acres in class "C," and 100 acres in class "D." The viewers found and reported that class "A" lands would be benefited $60.00 per acre; class "B" $45.00 per acre; class "C" $30.00 per acre, and class "D" by said report at $81,705.80, and the assessment of the lands in class "A" was fixed at $28.09 per acre, class "B" $21.07 per acre, class "C" $14.04 per acre, and class "D" at $7.02 per acre for the purpose of raising funds to pay the cost of constructing the ditch.

In their exceptions the Burbanks denied that in their 600 acre tract there were 104 acres of land in class "B" that would be benefited $45.00 per acre, and therefore should be assessed at $21.07 per acre, but they admitted that there were 60 acres of class "B" land that would be benefited $45.00 per acre and should be assessed at $21.07 per acre. They also denied that there were 96 acres of class "C" land in said tract that would be benefited $30.00 per acre, and should be assessed at $14.04 per acre, but admitted that there were 44 acres that were so benefited and should be so assessed. They denied that there were 40 acres of class "D" land in said tract that would be benefited $15.00 per acre and should be assessed at $7.02 per acre, but admitted that there were 30 acres that would be so benefited and should be so assessed. They denied that there were 73 acres of class "B" land in their 800 acre tract that would be benefited $45.00 per acre and assessed at $21.07 per acre, but admitted that there were 50 acres in said tract that would be so benefited and should be so assessed. They denied that there were 85 acres in said tract of class "C" lands which would be benefited $30.00 per acre and should be assessed at $14.04 per acre, but admitted that there were 40 acres in said tract that would be so benefited and should be so assessed.

They denied that there were 50 acres of "D" class lands in said tract that would be benefited $15.00 per acre and should be assessed at $7.02 per acre, but they admitted that there were 30 acres of land in said tract that would be so benefited and should be so assessed. They also set forth the fact that the cutting of the ditch would destroy a certain part of the fence which runs around the outside boundary of all the lands of the district and would thus turn out a certain portion of their lands, which portions would have to be fenced and they asked $112.50 for this purpose. All these exceptions were overruled.

The Atkinsons excepted to the classification of their lands, and denied that they owned 58 acres of "A" class land in their upper farm, 70 acres that should be classed as "B," 100 acres that should be classed as "C," or 200 acres which should be classed as "D," and affirmatively stated that there were not more than 100 acres of land in their said boundary which would be benefited at all, and of the said 100 acres 55 acres are wet lands and should be placed in class "A;" the remaining 45 acres should be classed as "D." They denied that there were 125 acres in their lower farm which should be classified as "A" lands, or 110 acres that should be classified as "B," or 100 acres as "C," and denied that 435 acres of their lands would be benefited at all; that not more than 175 acres of said land would be benefited in any way by the ditch, and that of this 175 acres 75 acres are wet and should be classed as "A," and the remaining 100 acres should be classed as "D," and that the remainder of their lands would not be benefited in any way. On these exceptions the hearing was consolidated and without objection from either side a jury was empaneled and tried the case. It was purely a question of fact. The trial resulted in the confirmation of the viewers' report, and from the judgment entered upon that verdict the Burbanks and Atkinsons appeal.

The evidence is voluminous and rather difficult to understand owing to its intricate nature. With the evidence are filed several large, well-executed maps supposed to show the location of the various sloughs, ponds, lakes and ridges which lay in or traverse the lands of the drainage district. Before the trial was had the exceptors obtained the service of C. W. McElroy, an expert drainage engineer, who made a survey of that part of the district in which the lands of the Burbanks and Atkinsons lay. He prepared and filed with his testimony heard at

the trial two excellent maps. According to his evidence the lands are not properly classified in the viewers' report. In other words, more acres are reported as benefited by the ditch than will in fact be so benefited. In addition to this, lands are placed in class "A" that should be in class "B," and lands are placed in class "B" that should be in class "C," and lands are classed as "C" that should be in "D," and lands are classed as "D" that should not have been placed in either class because no benefit will be derived. There are some lands in each of the classes "B," "C" and "D," as shown by the report of the viewers, which McElroy says should not have been placed in either class because not benefited by the ditch. On the maps which he filed with his evidence are sketched the wet lands, lakes, sloughs and ponds, and the acreage of each is set out with reasonable certainty. It is admitted, however, by the exceptors that some of their lands would be benefited by the construction of the ditch. In fact, they were applicants for the ditch and they now say they are not obstructionists and that this litigation is not intended to hinder or obstruct the ditch but only to obtain a fair classification of the lands affected by it.

For the appellees it is shown by a drainage engineer, Norman B. Orcutt, and the viewers that a complete survey of the lands was made showing the number of acres of wet lands, the size of the slews, ponds and lakes and the general location and size of the ridges or dry ground and this is all indicated upon the maps filed by the drainage engineer, Orcutt. It is said that some of the sloughs, ponds and lakes were not surveyed with a compass and chain but were merely stepped or estimated, and this appears to be true in some instances. It must, however, be remembered that Orcutt is a drainage engineer of wide experience, having performed services similar to those rendered in this case in other drainage projects in the same county, and that as such engineer he was prepared and competent to ascertain the size and acreage of the different ponds, sloughs, and wet places, and as he spent much time in doing this work and his honesty and integrity are vouched for by appellants as well as by appellees, we are unable to agree with counsel for appellants that the judgment should be reversed upon this ground, and the *prima facie* case made out for the report of the viewers overthrown. After the viewers had made their final report

and attached it to their estimates of benefits and assessments, and maps, the jury was empaneled, and after hearing the oral evidence, were allowed to and did go in charge of an officer upon the lands in question for the purpose of viewing the same and ascertaining the actual conditions that existed there. This was part of the evidence. After viewing the district they returned to the court room and the trial was continued and concluded by the return of a verdict confirming the viewers' report. While there is much conflict in the evidence as to the number of acres of the different classes of lands contained in the boundaries owned by the exceptors, there is an abundance of evidence to support the verdict of the jury, and it can not be said that the verdict appears to have been rendered through prejudice or passion nor that it is flagrantly against the weight of the evidence.

Complaint is made of the instructions given by the trial court to the jury. As stated in brief of counsel for appellants, instruction number one is largely a statement of an abstract principle of law and could have been omitted with propriety. It is also argued that said instruction was erroneous in that it failed to direct the jury to take into consideration the costs incident to condemnation proceedings to obtain rights of way for *lateral* ditches over the lands of others. Perhaps the instruction could have been made more clear upon this point by stating the proposition differently, but we think the statement in the instruction concerning the consideration of costs in such cases was substantially correct and there was no prejudicial error. While we agree with counsel that instruction number one could have been omitted, we do not regard the giving of it by the court as prejudicial error, nor do we think that instruction number two was erroneous in any material respect. As the exceptors were petitioners for the drainage district and admitted that their lands, or at least some part thereof, would be benefited by the construction of the ditch, the court properly instructed the jury "that some of the lands of the Misses Burbank and the Atkinson heirs will be benefited." The instruction then sets out the classification of the lands and the benefits derived by each class as found by the viewers and reported to the court, and the jury was then told by this instruction to find from the evidence how much land of each of said exceptors "will be so benefited" and the class or classes in which each shall be put. The evidence upon which the jury had the right to rely

included not only that heard from witnesses but that obtained by a view of the premises which the jury had. There is no exception to the division of the said lands into "A, B, C, and D" classes or the finding of the benefits had at $60.00 for class "A," $45.00 for class "B," $30.00 for class "C," $15.00 for class "D," nor that class "A" should be assessed at $28.09 and class "B" at $21.07, class "C" at $14.00, class "D" at $7.02, but the exceptions are directed to the correction of the classification of the acreage of each tract. That is to say that the exceptors admit that lands of class "B" should be assessed at $21.07 per acre, but they insist that the viewers reported more acres of class "B" in each tract belonging to exceptors than were actually in said tract of that quality of ground. This was the one issue. So the instructions of the court, it appears to us, correctly submitted the question to the jury and gave the jury the opportunity to say from all the evidence whether the correct number of acres of each class of land was reported by the viewers. If the jury had been satisfied from the evidence that in the Burbanks' upper tract there were only 75 acres of class "B" land instead of 104 acres, as found and reported by the viewers, it would have been the duty of the jury to have returned a verdict showing that the said tract of land contained only 75 acres of class "B" land; but after considering all the evidence and having viewed the premises, the jury returned a verdict in conformity to the viewers' report, as it was authorized to do by the latter part of instruction number two in case it found from the evidence that the viewers had classified the lands of appellants correctly. There was, therefore, no substantial error in the instructions under which the jury tried the case.

Upon the whole we think appellants not only received a reasonably fair classification and assessment of their lands, as reported by the viewers, but a substantially correct and errorless hearing both in the county and circuit courts.

Judgment affirmed.